[Cite as *Handford v. Buy Rite Office Products, Inc.*, 2013-Ohio-4712.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
### No. 99734

---

# PEGGY HANDFORD

### PLAINTIFF-APPELLANT

vs.

# BUY RITE OFFICE PRODUCTS, INC.

### DEFENDANT-APPELLEE

---

## JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-780349

**BEFORE:** Rocco, J., Celebrezze, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** October 24, 2013

**ATTORNEYS FOR APPELLANT**

Fred M. Bean
Brian D. Spitz
The Spitz Law Firm, L.L.C.
4568 Mayfield Road
Suite 102
South Euclid, Ohio 44121

**ATTORNEY FOR APPELLEE**

Jack S. Malkin
20521 Chagrin Boulevard
Suite E
Shaker Heights, Ohio 44122

KENNETH A. ROCCO, J.:

**{¶1}**  Plaintiff-appellant Peggy Handford appeals from the trial court's order granting summary judgment in favor of defendant-appellee Buy Rite Office Products, Inc. ("Buy Rite").  The trial court correctly determined that summary judgment was warranted in this case, and so we affirm the trial court's final judgment.

**{¶2}** Because this appeal stems from an order granting summary judgment, we review the record de novo.  *Hurd v. Blossom 24 Hour We Care Ctr., Inc.*, 8th Dist. Cuyahoga No. 97936, 2012-Ohio-3465, ¶ 13.

**{¶3}** Handford worked for Buy Rite in a sales position from November 1, 2011, until she resigned on January 27, 2012.  On April 12, 2012, Handford filed a complaint against Buy Rite alleging (1) that Buy Rite had failed to pay her overtime wages in violation of the Ohio Minimum Fair Wages Standards Act; (2) that Buy Rite had violated the Ohio Whistleblower Statute; and (3) that Buy Rite had constructively discharged Handford.[1]

**{¶4}** At the close of discovery, Buy Rite filed its motion for summary judgment, which the trial court granted.  Handford appeals, setting forth six assignments of error for our review:

> I.  The trial court committed reversible error by wrongfully weighing the facts.

---

[1]Although two other causes of action were alleged in her complaint, Handford makes no argument in her briefs with respect to these claims, and so we do not consider them on appeal.

II.  The trial court committed reversible error in determining that Handford fell within the outside salesperson exemption.

III. The trial court committed reversible error by factually determining that Handford was a salaried employee for purposes of her overtime claim.

IV.  The trial court committed reversible error by factually determining that Handford did not provide enough evidence supporting her claim that she worked overtime hours.

V.  The trial court committed reversible error in granting summary judgment as to Handford's whistleblower claim.

VI.  The trial court committed reversible error by improperly weighing evidence regarding Handford's constructive discharge claim.

{¶5}  Having examined each of Handford's causes of action separately to determine whether there is any merit to her assignments of error, we conclude that the trial court did not err in granting summary judgment for Buy Rite.

*Summary Judgment Standard*

{¶6} Handford's first assignment of error alleges that the trial court committed reversible error by improperly "weighing the facts."  In other words, Handford argues that the trial court did not correctly apply the summary judgment standard.

{¶7}  Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party.

{¶8} The party moving for summary judgment has the initial burden to show that no genuine issue of material fact exists. *Redeye v. Belohlavek*, 8th Dist. Cuyahoga No. 87874, 2007-Ohio-85, ¶ 16, citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). The movant cannot simply rely on conclusory assertions that the nonmovant has no evidence; rather, the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support his claims. *Id.*, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).

{¶9} If the movant meets his burden, the burden then shifts to the nonmovant to set forth specific facts demonstrating the existence of a genuine issue of material fact. *Id.* The nonmoving party cannot meet this burden by resting on unsupported allegations contained in the pleadings. *See Citibank, N.A. v. Katz*, 8th Dist. Cuyahoga No. 98753, 2013-Ohio-1041, ¶ 15. Similarly, vague and conclusory allegations contained in an affidavit do not create a genuine issue of material fact. *See id.* While "the nonmoving party does not need to try its case at this juncture, [it] must produce more than a scintilla of evidence in furtherance of its claims." *Jones v. Swagelok Co.*, 8th Dist. Cuyahoga No. 83849, 2004-Ohio-3876, ¶ 40. If the nonmoving party establishes the existence of a genuine issue of material fact, then the trial court should deny the motion for summary judgment. With this standard in mind, we turn to the instant case.

{¶10} Handford contends that the trial court improperly credited evidence in Buy Rite's favor. Handford takes issue with an affidavit from Jonathan Wexler, a former Buy Rite salesperson. According to Handford, the affidavit was drafted under suspicious circumstances, because Wexler did not help prepare the affidavit and did not sign it in a notary's presence. But the trial court's decision does not rely on the information contained in the Wexler affidavit, so, even if the Wexler affidavit was somehow defective, Handford cannot establish that she was prejudiced by this fact. Handford also argues that the statements contained in the affidavit conflict with statements Wexler made in his deposition and, thus, create fact questions. Having reviewed the Wexler affidavit and the deposition testimony, we do not observe a conflict between the two, but, even if a conflict did exist, Handford fails to specify how this supposed conflict creates a genuine issue of material fact about any of the specific claims set forth in her complaint.

{¶11} Handford makes two additional arguments under this assignment of error. First, Handford asserts that the trial court did not properly credit the affidavit of Chris Parks in considering Handford's claim for overtime pay. She also argues that the trial court failed to properly consider two affidavits that supported her whistleblower claim. Because these arguments pertain to specific claims, we address them in our discussion of those claims.

{¶12} For now, it is enough to say that, even if the trial court failed to properly consider evidence submitted by Handford, our de novo review of the record leads us to conclude that summary judgment was warranted for Handford's overtime claim,

whistleblower claim, and constructive discharge claim. Accordingly, we disagree with Handford's contention that the trial court's treatment of the evidence constituted reversible error, and so we overrule the first assignment of error.

*Overtime Claim*

{¶13} Handford's second, third, and fourth assignments of error all pertain to her claim that Buy Rite withheld overtime pay from her in violation of R.C. 4111.03(A), Ohio's Minimum Fair Wage Standards Act. The trial court set forth two independent reasons for granting summary judgment on Handford's overtime claim. First, the trial court determined that Handford was an exempt employee for purposes of R.C. 4111.03, and so she was not entitled to overtime compensation. Second, the trial court determined that, even if Handford was not an exempt employee, she had failed to carry her burden to present evidence demonstrating that she had performed work for which she was not adequately compensated. Although the trial court erred in determining that the exemption applied, the trial court correctly concluded that Handford had not adequately carried her burden. Accordingly, the trial court did not err in granting summary judgment for Buy Rite on the overtime claim.

{¶14} R.C. 4111.03(A) provides that an employer must pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate, for hours worked in excess of 40 hours in one workweek, unless the employee is exempt under section 7 and section 13 of the Fair Labor Standards Act of 1938 ("FLSA"). If an FLSA

exemption applies, then the employee is not entitled to overtime pay under R.C. 4111.03(A).

{¶15} Exemptions are narrowly construed against the employer. The employer must demonstrate by clear and affirmative evidence that the employee is covered by the exemption. *White v. Murtis M. Taylor Multi-Service Ctr.*, 188 Ohio App.3d 409, 2010-Ohio-2602, 935 N.E.2d 873 (8th Dist.), ¶ 12. Because there is a presumption of non-exemption, the exemption is applied only in "'those circumstances plainly and unmistakably within the exemption's terms and spirit.'" *Id.*, quoting *Jastremski v. Safeco Ins. Cos.*, 243 F.Supp.2d 743, 747 (N.D.Ohio 2003). The manner in which an employee spends his time is a fact question, but the issue of whether the employee's duties fall within an exemption is a question of law. *Id.*

{¶16} An "individual employed as an outside salesperson" who is "compensated by commissions" is an exempt employee. R.C. 4111.03(D)(3)(d). The trial court determined that Handford's position at Buy Rite was that of an outside salesperson, that Handford's compensation was based on commission, and that, therefore, Handford was an exempt employee who was not entitled to overtime compensation under the statute.

{¶17} Handford's second assignment of error contests the trial court's determination that Handford fell under the exemption. In support of her argument, Handford points to 29 C.F.R. 541.500, which sets forth that an employee cannot be considered an outside salesperson unless, in performing her job duties, she is "customarily and regularly engaged away from the employer's place or places of

business." Handford asserts that the trial court's exemption analysis was flawed because, although it was Buy Rite's burden to demonstrate that the exemption applied, the trial court did not require Buy Rite to present any evidence on whether Handford's job duties were customarily and regularly performed away from Buy Rite's office.

{¶18} We agree. The trial court's opinion does not discuss whether Handford's job duties were primarily performed inside or outside the office. Further, Buy Rite has not pointed to evidence in the record to meet its burden of demonstrating that Handford's duties were primarily performed outside of the office. Because the evidence did not establish whether Handford performed her job duties while "customarily and regularly engaged away from [Buy Rite's] place * * * of business," and because the burden was on Buy Rite to establish this fact, the trial court erred in applying the exemption. Accordingly, we sustain the second assignment of error.

{¶19} Having determined that the trial court erred in applying the exemption, we need not address any remaining arguments Handford has made with respect to the exemption, because those arguments are now moot. Accordingly, we decline judgment on Handford's third assignment of error.

{¶20} Although the outside sales exemption was inapplicable, we still conclude that the trial court correctly granted summary judgment to Buy Rite on Handford's overtime claim. The trial court's second, independent reason for granting summary judgment on the overtime claim was based on its determination that Handford had failed to meet her evidentiary burden. We agree.

**{¶21}** When an employee asserts a claim for unpaid overtime, the employee carries the initial burden of demonstrating that she performed work for which she was not adequately compensated. *See McCrimon v. Inner City Nursing Home, Inc.*, N.D. Ohio No. 1:10 CV 392, 2011 U.S. Dist. LEXIS 113302 (Sept. 30, 2011); *Simmons v. Wal-Mart Assocs., Inc.*, S.D. Ohio No. 2:04-CV-51, 2005 U.S. Dist. LEXIS 21772 (July 19, 2005).[2] If the employer has kept proper and accurate time records, the employee can easily meet her burden by securing those records. *McCrimon*, citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).

**{¶22}** But when an employer fails to keep accurate and adequate time records, the plaintiff's burden of proof is "relaxed." *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir.1999), citing *Anderson* at 686-687. The employee satisfies the relaxed burden by producing sufficient evidence indicating the amount and extent of her uncompensated work "as a matter of just and reasonable inference." *Id.* The evidence must also establish that the employer had actual or constructive knowledge that the employee was working outside the normal workday. *Wood v. Mid-America Mgmt. Corp.*, 192 Fed. Appx. 378, 380 (6th Cir.2006). "An employer cannot satisfy an obligation that it has no reason to think exists. And an employee cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid." *Id.* at 381. If the employee meets her initial burden,

---

[2]The FLSA's overtime pay requirements are identical to those contained in R.C. 4111.03. Although Handford has elected to proceed only under state law, we look to cases interpreting the FLSA in guiding our interpretation of R.C. 4111.03.

the burden then shifts to the employer to set forth evidence of the precise amount of work performed or to put forth evidence that negates the reasonable inference. If the employer fails to produce such evidence, the employee prevails. *Id.*

{¶23} The record in this case reveals that Buy Rite kept records of the dates that Handford worked, but not of the hours that she worked on those dates. Because the time records were imprecise, we apply the relaxed, reasonable-inference standard. Although the burden is relaxed, a plaintiff must still do more than generally allege that she worked off the clock. *See Simmons* at *27-*30 (employee's evidence consisting of a "bald assertion that from 1999 to 2003 he worked off the clock over 200 times on unspecific days is not enough to create genuine issues of material fact as to whether he is owed any additional compensation").

{¶24} The trial court determined that Handford had failed to produce any evidence to support a reasonable inference that overtime work was performed and reported for compensation. In her fourth assignment of error, Handford argues that she satisfied her burden through the production of her own affidavit and the affidavit of Chris Parks. The trial court's analysis does not refer to the Handford affidavit nor the Parks affidavit. Having reviewed these affidavits, we conclude that Handford failed to satisfy her burden.

{¶25} Handford's affidavit states that, although she initially thought she would be working as an outside salesperson, Buy Rite changed her position on the first day of work so that she was working in the office. According to her affidavit, Handford worked in the office from 8:30 a.m. until 5:00 p.m., five days per week and worked from home

"about 10 hours per week." Handford Aff. ¶ 9. Handford averred that she worked "about 50 hours per week." *Id.* at ¶ 10. Handford asserted in her affidavit that she received no overtime compensation. The Parks affidavit sets forth that Parks had personal knowledge that Handford had worked for Buy Rite from home for about ten hours per week. The affidavit does not state how Parks knows Handford or how Parks obtained this personal knowledge.

**{¶26}** The averments contained in the Handford affidavit and the Parks affidavit are not sufficient to satisfy Handford's burden. Like the employee in *Simmons*, Handford generally alleges that she worked outside of the normal workday on unspecified days for *about* ten hours a week. Handford does not allege that she kept any personal records of dates and times worked outside of normal business hours.

**{¶27}** Further, as Handford does not allege that she ever told Buy Rite about the hours she had been working outside of the office, there is no evidence that Buy Rite had actual knowledge of the alleged overtime hours. And, if, as Handford alleges, Buy Rite changed her position on the first day of employment from outside salesperson to inside salesperson, Buy Rite would not have had constructive knowledge that Handford was working additional hours outside of the office. The evidence contained in the Parks affidavit adds nothing more; it merely echos Handford's claim that she worked approximately ten hours a week from home.

**{¶28}** Because Handford failed to satisfy her burden to demonstrate that she performed work for which she was not adequately compensated, the trial court did not err

in granting Buy Rite's motion for summary judgment on Handford's overtime claim. Accordingly, we overrule the fourth assignment of error.

*Whistleblower Claim*

**{¶29}** In Handford's fifth assignment of error, she argues that the trial court erred in granting summary judgment to Buy Rite on her whistleblower claim. In her complaint, Handford alleged that she was forced to resign from Buy Rite because after she had complained about Buy Rite's illegal practices, Buy Rite had refused to remedy its conduct.

**{¶30}** R.C. 4113.52 proscribes an employer from taking any disciplinary or retaliatory action against an employee who "blows the whistle." Most of Handford's arguments on appeal involve whether Handford's conduct constituted protected whistleblowing. But we need not address these arguments. Viewing the evidence in the light most favorable to Handford, we conclude that Buy Rite did not take any disciplinary or retaliatory action against Handford. Accordingly, Handford cannot prevail on a whistleblower claim, and the trial court did not err in granting summary judgment for Buy Rite.

**{¶31}** The statute defines "disciplinary or retaliatory action" broadly, including, "without limitation":

(1) Removing or suspending the employee from employment;
(2) Withholding from the employee salary increases or employee benefits to which the employee is otherwise entitled;
(3) Transferring or reassigning the employee;
(4) Denying the employee a promotion that otherwise would have been received;

(5) Reducing the employee in pay or position.

R.C. 4113.52(B).

**{¶32}** Handford does not argue that Buy Rite took any of these actions; rather, she asserts that she was "forced to resign." Handford's affidavit alleges that she learned, through overheard phone conversations and through discussions with coworkers, that Buy Rite had double billed clients on credit card purchases. The affidavit also sets forth that Handford had learned that some individuals had smoked marijuana at Buy Rite's office. Handford believed that these activities were illegal. According to her affidavit, on the morning of January 27, 2012, Handford orally reported these activities to her supervisor, Michelle Ryb. Handford also alleged that she left a note, detailing the conduct, on Ryb's desk. Handford averred that she met with Ryb later that day to discuss the matter further, but that Ryb told Handford that "nothing was going to be done to remedy the conduct." Handford Aff. ¶ 21. After hearing Ryb's response, Handford "elected to resign at the end of the day." *Id.* at ¶ 22. Handford alleged in her affidavit that she resigned because she was fearful of continuing to work for Buy Rite under the circumstances. Handford notified Ryb of the allegations and resigned from Buy Rite all on the same day — a Friday. The following Monday, Handford started her new job with Innovative Cleaning.

**{¶33}** Assuming Handford's version of events as true, we conclude that Buy Rite did not subject Handford to any "disciplinary or retaliatory action." Handford is essentially arguing for a rule that states that if an employee notifies her employer of

alleged illegal conduct, and the employer states that it does not intend to act on the information, then the employee has been subjected to disciplinary or retaliatory action under the Whistleblower Statute. We disagree. Refusing to act on the employee's allegations, standing alone, cannot be understood as "disciplinary or retaliatory action"; in fact, the employer has taken no "action" at all.

{¶34} To the extent that Handford is arguing that Ryb's decision to do nothing was a "disciplinary or retaliatory action," because it was tantamount to a constructive discharge, we are unconvinced. Constructive discharge exists where an employer's actions make working conditions so intolerable that a reasonable person under the circumstances would feel compelled to resign. *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 588-589, 664 N.E.2d 1272 (1996). Ohio courts generally apply an objective test to evaluate whether an employee was constructively discharged, evaluating "whether the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent." *Id.* at 589. The court should consider a wide range of factors, such as "reductions in sales territory, poor performance evaluations, criticism in front of coemployees, [and] inquiries about retirement intentions * * *." *Id.*

{¶35} Viewing the facts in the light most favorable to Handford, we conclude that Buy Rite's actions in this case would not make a reasonable person believe that Handford's termination was imminent. The only action allegedly taken by Handford's employer was that Ryb told Handford that she did not intend to pursue Handford's allegations. Handford resigned within hours of this interaction. Handford was not

threatened. She was not criticized or harassed. None of her supervisors insinuated that her position at Buy Rite was in jeopardy. Rather, Handford did not approve of the manner in which Ryb intended to deal with the allegations, and so she "elected to resign." As a matter of law, Ryb's response to Handford's complaint does not create an actionable claim for constructive discharge.

{¶36} Handford has failed to establish that Buy Rite violated R.C. 4113.52, because she does not point to any evidence that would demonstrate that Buy Rite took a "disciplinary or retaliatory action" against Handford.[3] Because the trial court properly granted summary judgment on Handford's whistleblower claim, we overrule the fifth assignment of error.

*Constructive Discharge*

{¶37} Hanford's sixth assignment of error challenges the trial court's determination that Buy Rite was entitled to summary judgment on Handford's constructive discharge claim. For the reasons stated above, we conclude that the trial court did not err in ordering summary judgment on this cause of action, and so we overrule the assignment of error.

---

[3]As mentioned earlier, Handford argues in her first assignment of error that the trial court failed to properly consider two affidavits that supported her whistleblower claim. Handford relies on these affidavits to establish the existence of illegal activity at Buy Rite, not to establish whether Buy Rite took any adverse action against Handford after she reported the alleged illegal activity. Accordingly, even if the trial court failed to properly credit these affidavits, our analysis on this claim would remain unchanged.

**{¶38}** We overrule the first, fourth, fifth, and sixth assignments of error. We sustain the second assignment of error. We need not address the third assignment of error because the second assignment of error is dispositive of Handford's exemption argument. We affirm the trial court's final judgment in favor of Buy Rite.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
SEAN C. GALLAGHER, J., CONCUR